## Evans v. Commonwealth.

Jan. 19, 1945.

Dissenting Opinion Jan. 26, 1945.

274

L. M. Ackman for appellant.

Eldon S. Dummit, Attorney General, and H. K. Spear, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Appellant, Estill Evans, to whom we shall hereinafter refer as "defendant," was convicted at his separate trial in the Grant circuit court of one of the offenses denounced in section 1164 of Baldwin's 1936 Edition of Carroll's Kentucky Statutes (section 433.190, KRS), with an attached punishment of three years' confinement in the state penitentiary. The particular offense charged in the indictment was and is the unlawful, wilful and felonious breaking into the storehouse of Claude Angle, with the felonious intent to take, steal, or carry away therefrom articles of value and against the will of the owner.

Defendant's motion for a new trial was overruled, and from the verdict and judgment pronounced thereon he prosecutes this appeal, relying on a number of grounds stated in his motion for a new trial, but only two of which are relied on in his brief on this appeal. They are: (1) That the evidence adduced on the trial was insufficient to sustain a conviction, and (2) that the court erred in failing to instruct the jury as to the weight and convicting force of the testimony of an accomplice as outlined in sections 241 and 242 of our Criminal Code of Practice. Our opinion will be directed solely to those two contentions, disposing of them in the order named.

There was jointly indicted with defendant Carl Hager, John F. Bohon and A. N. Ramey, and the Commonwealth at the trial introduced Bohon, whilst defend-

ant introduced in his behalf his co-defendant, Hager. A substantial statement of the facts as disclosed by the testimony of all of the witnesses introduced at the trial is: That defendant resided in Lexington, Kentucky. He owned a number of automatically playing victrolas which he placed with the operators of restaurants and road-houses on terms of dividing the commission derived from their operation by patrons of such places. He had placed one of the machines with Angle, who operated a restaurant and roadhouse, where he also sold beer at retail under licenses previously obtained. Angle's place of business was located about one mile from the town of Corinth in Grant County in which county defendant had likewise placed one of his victrolas with two other persons engaged in the same character of business. He also had a number of them distributed at other places in territory surrounding his home town of Lexington.

On the morning of November 11, 1943, defendant approached some or all of his co-defendants in the indictment and requested them to go with him that night to the place of business of Angle in Grant County for the purpose of regaining possession of the victrola which he had deposited with him since appellant claimed to be dissatisfied with the way it was being handled and operated. On that night between 10:30 and 11 o'clock the defendants in the indictment, with a girl about 19 years of age, whose name was Mary Hopkins, left Lexington in appellant's automobile which was driven by Hager, one of the defendants in the indictment. The crowd supplied themselves before starting on the trip with a quart or more of liquor which they drank en route to Angle's place of business, stopping on the way to procure a lunch from a similar institution, and also stopping at others they passed in an effort to procure more liquor. But those places were closed and the remaining portion of the trip to Angle's place of business, and back to Lexington, was endured by the travelers without any quenching of their thirst for the desired stimulant. Finally (and sometime after 12 o'clock) they reached the store of Angle, but there were then lights in his establishment and they drove their car about 150 yards beyond it and parked it at the mouth of a side road entering the highway where they remained until about 5:30 A. M. on the morning of November 12. The defendant, Bohon, who was introduced by the Commonwealth, testified that a short while before the house was entered, as hereinafter

stated, the appellant, Evans, in conjunction with his co-defendants sent Hager back to Angle's establishment to reconnoiter and to see whether or not the lights in it had been extinguished; that Hager returned and reported that the horizon was clear, whereupon all of the indicted defendants, except appellant, returned to Angle's store leaving appellant in the car who promised to drive it back to the store and pick up the removed articles the co-defendants were to procure from the store after they had done so; that some one of the crowd opened the screen door and the three entered the building. The witness also stated that when he and his two co-defendants left the car where it was parked appellant said that there were some slot machines down there and that he wanted to get them as well as the victrolas. He also testified that Hager first entered the building and held the screen door for the others to enter. He then said: "Ramey went in and I guess in about three minutes later I hear a scuffling noise and I ran." He also testified that on his way toward the place where the car was stopped he met it "coming down the road" and it was driven by appellant. The car was then stopped and they waited for the others to return. One of those absent did return shortly afterward, but Ramey did not, and the crowd, except Ramey, started on their return trip to Lexington, their mission having been fruitless.

Ramey did not testify in the case, but Angle testified that he closed his store that night and locked it at 2:30 A. M. with all the lights turned out, except one in an adjoining restroom but which cast no light in any other part of the building, but the moon was shining when the store building was entered. He heard the noise made by the breaking of the door and also heard the clicking noise made by the cash register being opened and closed immediately after the building was entered. In the meantime he had gotten up from where he was sleeping adjoining the larger room in which he conducted his business when he was approached by Ramey who struck him on the side of the head with a piece of iron rod but which was not sufficient to incapacitate him, and upon receiving the blow he knocked Ramey down with his fist and which appears to have incapacitated him, whereby witness was able to hold Ramey until the arrival of an officer who had been notified by telephone by Angle's wife and who arrived some ten or fifteen minutes later.

Angle also testified that he was not acquainted with some of the defendants in the indictment, but he did recognize Evans as being one of those who had entered his store building, which he was enabled to do from the light of the then shining moon. He, however, was contradicted in that statement by witnesses who testified that he later said that he did not recognize any member of the crowd who entered his building. The officers who appeared upon the scene shortly afterward testified that Angle had received a wound on his head and from which he was bleeding, and that they examined the door and found that it had been "jimmied," with clear indications of having been prized open.

Angle also testified that some days before the night in question (perhaps as much as a week) appellant was at his place of business and inquired of him where he usually slept, i. e., whether in his residence some thirty feet from the store building, or in the latter. Witness informed him that his regular sleeping place was in his residence but sometimes he retired and slept in his business building.

Defendant testified and admitted having made the trip, beginning at the late hour of the night above indicated; but he claims that before they reached Angle's place of business he became so intoxicated that he folded himself on the back seat of the car and never knew anything until they arrived in Lexington on their return trip. He stated, however, that he remembered making the trip from Lexington to Grant County and the various places where a stop was made and of his thirst to procure more whiskey and his failure to do so, all of which he says occurred before arriving at Angle's store. He denied what his co-defendant, Bohon, said as to what occurred after his car was stopped near Angle's store at the mouth of the side road. He did not explain why he selected the late hour of the night to make the trip which he contends was made solely to regain the possession of his victrola theretofore in the possession of Angle. He introduced as a witness in his behalf his co-defendant, Hager, who told about the trip and that he went along at the request of the appellant, Evans. He stated that appellant told him, and the other two co-defendants with appellant, that he wanted to recover the possession of his victrola, but that he did not hear him state that he also wanted to procure some slot machines which appellant admits having known were in the pos-

session of Angle and stored in his business building that was entered. He stated that he was one of the three who entered that building on the night in question, but he did not deny having opened the screen to the door; that upon entering the building he heard a voice in the adjoining room where Angle was sleeping and which "said something about shooting." Whereupon he left and went back to the parked car. He denied having been sent by appellant on the reconnoitering mission above referred to, but admitted that he drove the car throughout the trip and return from and to Lexington at the request of Evans who had been deprived of his license by having driven it while intoxicated. He stated that "We could have went to Chicago if we had stepped on it," meaning thereby that from the time they left Lexington until they arrived at Angle's store was sufficient to make the trip to Chicago. Appellant and his witness, Hager, were both shown to have been previously convicted of a felony. Such is substantially the substance of all of the testimony heard at the trial.

Counsel for appellant therefore argues that it was insufficient to support a conviction because (a) there was a failure to prove the necessary intent on the part of appellant to create the offense for which he was indicted, and (b) that the evidence failed to show the necessary breaking so as to constitute a felonious one under the statute. In making that argument counsel eliminates the testimony of Bohon, appellant's accomplice, as being insufficient to sustain a conviction under the provisions of the Code sections supra unless corroborated "by other evidence tending to connect the defendant with the commission of the offense" and which must be more than to "merely show that the offense was committed, and the circumstances thereof."

The testimony of Hager, as we have seen, was, that appellant intended to, and so instructed his co-defendants who entered the building, take therefrom some slot machines contained therein and operated by Angle, none of which did appellant own, and that, since he could not be convicted of intending to steal his own property (the victrola in the building which it is claimed he desired to repossess), the evidence is entirely barren of any proof to show that he intended to take other property, or any evidence corroborating that statement of the accomplice, Hager. But if the contention that there was no corroborating testimony supporting that statement by Hager

(to also take slot machines) was true, yet other testimony heard clearly shows that appellant intended to take from the building his victrola with its contents— part of which Angle owned as his commission—and which could be the subject of theft by appellant, notwithstanding the machine in which some of Angle's property was contained belonged to appellant. But we do not agree with counsel for appellant in his contention that the statement of the accomplice, Hager was not corroborated.

In the case of Mattingly v. Com., 195 Ky. 838, 243 S. W. 1044, we held that corroboration, sufficient under section 241 of the Criminal Code of Practice, may be proven by circumstances. Here we have a most potent and convincing circumstance that the purpose of appellant was something beyond the mere intention to peaceably get possession of his victrola then in the possession of the prosecuting witness, which is, that he chose the dead hours of night to accomplish his alleged innocent purpose, and an hour when the owner of the building entered would most likely be asleep in his adjoining residence, thereby creating an opportunity to enter his store room without molestation. An innocently inclined individual chooses no such hour to accomplish an innocent purpose, but it is the time when all evilly inclined persons select in performing a felonious act.

Moreover, Angle, as we have seen, identified appellant as one of the group who entered his building, and the jury had the right to believe his testimony, although he, as to such identification, was contradicted by other witnesses. Furthermore, if the testimony of Hager, the accomplice of appellant, may be considered by the jury as having been properly corroborated, as required by section 241 of the Criminal Code of Practice, then his explicit testimony as to the intention and purpose of appellant—plus such circumstantially established corroborating fact to which we have referred is amply sufficient to sustain the jury's verdict of guilty, and which brings us to consideration of ground (2) supra.

(2) Section 225 of the Criminal Code of Practice says: "The court shall, on the motion of either party and before any argument to the jury, instruct the jury on the law applicable to the case, which shall always be given in writing." Section 241, supra, of the same Code

says nothing about it being the duty of the court to instruct with reference thereto, but we have interpolated into it the requirement that the jury shall be instructed as to the weight and credibility to be given to the testimony of an accomplice when indisputably proven to have been one, but if there is a dispute in the testimony as to whether the witness was or not an accomplice to then submit that issue to the jury with the admonitions contained in that section of the Code. The question, therefore, is at once presented whether our interpolated requirement referred to is an "instruction" embraced by section 225 of the same Code, or whether or not the information required from the court to the jury with reference to section 241 may be made by what is usually called an "admonition." The court in this case at the close of the testimony of the accomplice (who was the last witness introduced by the Commonwealth) then and there told the jury in the presence of appellant and his counsel that the witness, Bohon, was an accomplice of appellant, and that "a conviction cannot be had in this case upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows that the offense was committed and the circumstance thereof." That information from the Court was placed on record as a part of it and no objection whatever was made to that statement of the court to the jury, nor was any objection made to it at any time thereafter.

In the case of Ochsner v. Com., 128 Ky. 761, 109 S. W. 326, 327, this court had before it the question now under consideration and which involved the correct interpretation of section 225, supra, of the Criminal Code of Practice. The general question there involved was one where it was required that the court should admonish the jury as to the effect to be given to the credibility of a witness, or the convicting effect to be given such testimony in the trial of the accused. Numerous are the cases decided by this court in which we have held that the jury should be admonished on such collateral issues, and we in the case just referred to, said:

"* * * and while it is also true that all instructions to the jury must be in writing (section 225, Criminal Code of Practice), an admonition or instruction limiting the effect of testimony is not within the defi-

nition of instruction as used in that section of the Code and in the cases cited.''

The proper admonition or information which the court is required to give to the jury relating to the testimony of an accomplice as the law governing its deliberations was given in this case, and which was made a part of the record, although it was not written on a separate piece of paper and delivered to the jury upon its retirement to the jury room to make a verdict. In the circumstances it would be surrendering logic to fallacy, and also a total disregard of common sense to hold that the required information that the court should give to the jury with reference to section 241 relating to the convicting effect and credibility to be given to the testimony of an accomplice to say that the rights of defendant in this case were not duly protected. We therefore hold that an admonition, such as the court gave here relating to the weight to be given to the testimony of an accomplice, is not an instruction embraced within section 225, supra, of the Criminal Code of Practice, and that the admonition to which we have referred protected every right that the appellant could claim and to which he was entitled under, not only our excerpt from the Ochsner case, supra, but also under all reasonable views that could be reached in view of the language of both sections 225 and 241 of the Criminal Code of Practice. We therefore hold that ground (2) is without merit.

It might also be said that it is not at all clear but that the requirements of section 225 of the Criminal Code of Practice may not be waived, and that it was waived in this case. In the case of Bartram v. Com., 233 Ky. 244, 25 S. W. 2d 378, 379, we held—as did many cases cited in that opinion—that the giving of written instructions as required by section 225, supra, might be waived by the defendant on trial and that if the oral instruction that the court did give was done in the presence of the defendant and his attorney without objections, then the requirement was waived. However, in that case, and many listed prior ones, in which an interpretation of that section was made, the accused was on trial for only a misdemeanor, and this court in writing the opinions said that such a waiver could be made in ''misdemeanor cases.'' Whether the requirement could be waived in felony cases, we said this: ''The question as to whether the Code requirement (as contained in section 241) could be waived in felony cases was not be-

fore it (the court), as is also true in this case, and for that reason the right to waive the Code requirement (statutory only) should have been (or was) confined to the character of prosecution under consideration, and which we now do in this case, leaving the question for future determination in other degrees of criminal offenses.'' (Our parenthesis).

A later case so holding is Hounchell v. Com., 273 Ky. 172, 116 S. W. 2d 332, in which the Bartram case was referred to, the court saying:

''* * * in giving instructions in criminal cases, and in that case emphatically indorsed and clinched the rule that instructions in every instance in criminal cases under and by reason of the section of\ the Criminal Code of Practice, supra, must be in writing, unless waived by the defendant in person or by an attorney representing him, or when present by failing to object to oral instructions given by the court.''

That, too, was a misdemeanor case, and we have not found one where the waiver was made in the trial of a felony charge and which would seem to furnish the reason why in our opinions on that question we employed the phrase ''misdemeanor cases,'' when section 225 of the Criminal Code of Practice requiring instructions to be in writing makes no distinction, but on the contrary embraces all criminal offenses both misdemeanors and felonies. Therefore, we find no reason why it should be contended that this court in the cited cases intended to draw a distinction between trials for misdemeanors, and those for felonies, from the mere fact that the cases with which it was dealing—and in which it was declared that a waiver would be effectual—happened to be misdemeanors instead of felonies, since it is perfectly clear that there exists no possible ground upon which such a distinction could be made. Since, however, we have held that the admonition contained in this record sufficed to comply with the provisions of section 241, it is not essential that we should now finally determine whether the requirement contained in section 225 of the Criminal Code of Practice may be waived by the accused on his trial upon a felony charge, which question is again left open.

Finding no ground sufficient to authorize a reversal of the judgment, it is affirmed.

The whole Court sitting.

Judge Sims dissenting.

I feel compelled to dissent from so much of the majority opinion as holds that there was a compliance with section 241 of the Criminal Code of Practice when the court admonished the jury in the language thereof but did not give the usual accomplice instruction.

This court has held in a long line of decisions that it is reversible error to omit to instruct under section 241 unless the testimony of the accomplice is overwhelmingly corroborated by other testimony, or unless the accomplice's testimony relates to collateral or unimportant facts. Hendrickson v. Com., 235 Ky. 5, 29 S. W. 2d 646; Davis v. Com., 256 Ky. 423, 76 S. W. 2d 259. The common sense reason that a mere admonition does not suffice is because the spoken word from the bench does not carry the weight of a written instruction which the jury takes to their room upon retiring to reach a verdict.

Furthermore, the Legislature in enacting sections 241 and 242 of the Criminal Code of Practice has declared that the conviction of a defendant cannot be had upon the uncorroborated testimony of an accomplice and that if it be not corroborated "the court shall instruct the jury to render a verdict of acquittal, by which instruction they are bound." This recognizes the danger involved. This is of the same character as the requirement of section 238, that if the defendant be not proven guilty beyond a reasonable doubt, he is entitled to an acquittal. I suppose that the majority of the court would quickly agree that a failure to give an instruction on reasonable doubt is a reversible error, and that a verbal admonition covering the point would be wholly insufficient.

The same is true as to the defendant waiving such an instruction or the form thereof by remaining silent. The weight and effect to be given certain testimony, or the purpose for which it is admitted, or that it shall be disregarded because incompetent, concerning each of which an oral admonition should be given, are far different from the matter of sufficiency of proof of guilt. So, too, is the conduct of a jury during adjournment, concerning which the Code provides they shall be "admonished." Criminal Code of Practice, sec. 246. Here is recognized the difference in importance between an instruction and

an admonition. An examination of the subject in 23 C. J. S., Criminal Law, sec. 1227 et seq., will show that all jurisdictions require an instruction, or charge to the jury, that an accomplice must be corroborated. In that elaborate treatment it nowhere appears that an oral admonition has been deemed sufficient.

The present opinion reverses a policy of law which has been observed from the beginning of the Commonwealth.

It is elementary in criminal procedure that the court must correctly give all the law covering the case, and by sec. 225 of the Criminal Code of Practice the instructions must be in writing. If the instructions are not in writing, then they are not in the proper form.

So far as I know, this court has never written that sec. 225 may be waived in a felony case. A defendant may waive his right to have the jury admonished by not requesting an admonition, but there is no duty upon the defendant to request an instruction in a criminal case and his silence does not waive his right to have the court properly instruct the jury in writing upon the whole law. Clair v. Com., 267 Ky. 363, 102 S. W. 2d 367. If the defendant can waive the giving of written instructions in a felony prosecution, then his waiver must be express and not passive by mere failure to object.

I am authorized to say that Judge Latimer joins in this dissent.